UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

Reiyn Keohane,

      Plaintiff,

v.

Julie Jones,
*in her official capacity as*
Secretary of the Florida Department of Corrections,

Trung Van Le,
*in his official capacity as*
Chief Health Officer of the Desoto Annex,

Teresita Dieguez,
*in her official capacity as*
Medical Director of Everglades Correctional Institution,

Francisco Acosta,
*in his official capacity as*
Warden of Everglades Correctional Institution,

      Defendants.

_____

### Declaration of Reiyn Keohane

    1.    I, Reiyn Keohane, am the Plaintiff in this case. I am over the age of 18 and am competent to testify regarding the contents of this Declaration, which I make based upon my personal knowledge.

2. I am a 22-year-old transgender woman serving a fifteen-year sentence in the custody of the Florida Department of Corrections ("DOC"). I am currently incarcerated at Everglades Correctional Institution ("Everglades CI") in Miami, Florida.

3. I have known that I have a female gender identity since age 12.

4. At age 13 (around November 27, 2007), I began seeing a psychiatrist, Omar Rieche, M.D., of Fort Myers, along with a therapist in Dr. Rieche's practice, MaryAnn Rocco, LCSW. From age 14 on, with the support of these professionals, I always wore female-typical cosmetics, clothing, and hairstyles.

5. At age 16 (around March 2010), I was diagnosed with Gender Identity Disorder (now known as Gender Dysphoria).

6. At age 17 (around June 2011), I legally changed my name from a traditionally male name to my current name to bring my legal name into conformity with my gender identity. Even before my legal name change, I went by "Reiyn" among all of my friends.

7. Dr. Rieche referred me to a pediatric endocrinologist, Dr. Cayce T. Jehaimi, M.D., of Fort Myers. In early August 2013, at age 19, I began hormone therapy—Estrace (estradiol) and Aldactone (spironolactone)—under the care of Dr. Jehaimi.

8. Around September 22, 2013, I was charged with attempted second-degree murder and was taken into the custody of the Lee County Jail. At the Lee County Jail, I requested to continue my hormone therapy, but the Lee County Jail refused. In July 2014, I accepted a plea deal of 15 years, understanding that I would be returned to her hormone therapy after being transferred to DOC custody. Maintaining my hormone therapy was of the utmost importance to me and was the motivating factor in my acceptance of the plea.

9. On July 17, 2014, I was committed to the custody of the DOC. I began my commitment at the South Florida Reception Center.

10. From shortly after my arrival at the DOC, I began requesting treatment for my Gender Dysphoria. From the first conversations I had with DOC officials concerning my need for treatment, I made clear both my need for hormone therapy and my need to be able to live as female in all aspects of life—including dressing and grooming (including growing my hair)—as I did prior to my incarceration. Through to the present day, in nearly all conversations I have had with mental-health and medical officials at the DOC in which my transgender status and need for treatment for Gender Dysphoria were discussed, I raised both my need for hormone therapy and my need to access female dressing and grooming standards. I made repeated requests to mental-health and medical officials that I be provided comprehensive, medically necessary treatment for Gender Dysphoria, including hormone therapy and the ability to dress and groom in accordance with female grooming standards. These requests were denied.

11. At the South Florida Reception Center, I filed an informal grievance on August 11, 2014 (Request No. 08-060-14), stating:

> I need my hormone therapy resumed. I had it as a result of a legitimate, documented diagnosis and prescription when I was arrested and was then unjustly denied this treatment while in Lee County Jail. This treatment is absolutely necessary to my ability to mentally function. Without it I consider self-harm and suicide every single day. It is the only thing that matters in my life in this moment – that I have been taken off of such critical medication is cruel and unusual punishment in that it causes needless suffering. This is not an issue that is any way complicated – I need the medication. I was wrongfully refused treatment in a way which is irresponsible, discriminatory, and unconstitutional, and continue to be refused in the same manner by the DoC. The answer should be both obvious and simple – stop refusing to give me my prescription medication before I have to take any legal action.

12. This informal grievance was "returned" dated August 21, 2014, on the grounds that the DOC needed to obtain my outside medical records. The response stated:

I met with you on 08/21/14 and discussed inmate orientation procedure 601.210 regarding your aforementioned complaints. As discussed the next step in the process is to obtain previous/existing health information from your provider. You signed a Release of Information on 08/21/14 consenting to this action. My team will confer with your provider and obtain health information to channel to our provider to review and determine the best course of action.

13. On September 1, 2014, since I still was not receiving hormone therapy, I filed another informal grievance requesting again that I be placed back on hormone therapy. This was denied the next day on the grounds that I allegedly canceled an appointment with Dr. Jehaimi the previous year.

14. In another informal grievance filed September 12, 2014, I explained that I was unable to show up for the appointment because I was in jail at the time.

15. On September 24, 2014, I received a denial of the September 12, 2014, informal grievance, which states that "you will not be placed on hormonal therapy while incarcerated in the Florida State Dept. of Corrections. If you are having mental health concerns, please write a request to our Mental Health Dept. for an appointment to be seen."

16. On October 6, 2014, I filed an appeal (No. 14-6-33110) of the informal grievances filed on September 1 and 12, 2014. In that appeal, I state:

I am transgender and was receiving Hormone Replacement Therapy when I was arrested (Sept 23 2013). I have not rec[ei]ved it since. I have provided medical records that prove I was receiving this treatment, but the DeSoto medical staff refuses to give me this prescribed medication. The first denial was given on the grounds that "you canceled your appointment in November 2013". They are unable to provide documented proof that I canceled – it was canceled because I was in jail, not of my own accord. I wrote them again so that they may correct this, as it may have been a mistake. (see attached) The second denial (attached) is a flagrant example of their willful indifference to the needless suffering I face every day. I have been fighting to get my treatment back for this entire year – the only reason I have not received it since 2013 is because the state has refused to give it to me the entire time I have been in custody. This is not and never was a voluntary denial. . . .

17. Around October 14-17, 2014, while in administrative confinement, I attempted to hang myself because of the DOC's refusal to provide me with transition-related care.

18. Mr. Stuthers, a mental-health specialist at Desoto CI, told me that if he had to diagnose me, he would agree with the diagnosis of Gender Identity Disorder. Dr. Sicilia also told me, both at Desoto CI and Charlotte CI, that she agreed with the diagnosis of Gender Identity Disorder.

19. On a document dated October 21, 2014, my appeal (No. 14-6-33110) of the informal grievances filed on September 1 and 12, 2014, was returned without action on the grounds that "[y]ou did not provide this office with a copy of the formal grievance filed at the institutional level as required by rule or the reason you provided for by-passing that level of the grievance procedure is not acceptable."

20. On October 31, 2014, I filed a formal grievance with the warden at the Desoto Annex. In that grievance (Grievance No. 1411-564-003), I explained that it was cruel and unusual punishment for the DOC to deny me the medication that I needed. I stated:

> I have a legal right to receive it . . . . since I have documented proof that I was receiving it. To deny it is to <u>cause</u> depression and suicidal tendencies, which I must face on a daily basis. Statistically speaking, transgendered people literally have the highest suicide rate of any group of people – there is no counseling that can ever substitute for the medical treatment that I require. My mind violently rejects my own body, telling me that it is wrong, that parts of me are missing – to suggest that I receive counseling only is to do nothing to treat this at all. No amount of counseling can ever make who I am on this most fundamental level change . . . . .This treatment is literally necessary for me to have a future – there is no possible chance that I could endure the absolute agony of waking up every day to my own body forcing me to hate myself, to the point where I struggle not to hurt or kill myself every day, getting by only on the hope that it will not always be like this. To take my medication from me is to force this misery upon me – hormone therapy is necessary for me to live on a daily basis, and to complete my time in a positive and productive manner. I would like to use my time to better myself, and I try to, but this is the most important thing that can possibly be done to improve my future. Without it, I have no will to have a future at all – one where I can go on hating myself forever and ever, where I can never be truly happy no

matter what I do, is not a future worth having at all. This is, essentially, the reasoning as to why it is cruel and unusual punishment – a basis in reality to better understand why the law is supposed to protect my right to my hormone therapy.

21. On a document dated November 20, 2014, the formal grievance (Grievance No. 1411-564-003) was denied by Dr. Trung Van Le, M.D., who stated:

> UPON REVIEW OF YOUR MEDICAL RECORDS RECEIVED FROM DR. CAYCE JEHAIMI, YOU HAD CANCELLED YOUR LAST APPOINTMENT IN NOVEMBER OF 2013 WITH NO FURTHER SCHEDULED APPOINTMENTS. DR. JEHAIMI THEN NOTED THAT YOUR PRESCRIPTION FOR THE HORMONE REPLACEMENT THERAPY WOULD BE SUSPENDED AS IT WOULD BE DANGEROUS TO CONTINUE WITHOUT ANY CLOSE ENDOCRINE SUPERVISION. AT THIS TIME THERE IS NO CONSIDERATION TO RESTART YOUR HORMONE REPLACEMENT THERAPY. YOU ARE CURRENTLY BEING SEEN BY OUR MENTAL HEALTH STAFF WITH AN INDIVIDUALIZED SERVICE PLAN IN PLACE IN ORDER TO PROVIDE YOU A MEANS TO DISCUSS YOUR PROBLEMS WITH A MENTAL HEALTH PROFESSIONAL. IF YOU HAVE FURTHER CONCERNS OR QUESTIONS, YOU MAY ACCESS SICK-CALL AND ADDRESS THEM WITH THE HEALTH CARE STAFF. ALSO, AT ANY TIME YOU MAY SEEK MENTAL HEALTH SERVICES AND OUR STAFF WILL RESPOND AS PROMPTLY AS POSSIBLE TO YOUR REQUESTS.

22. In my appeal of the denial of Grievance No. 1411-564-003 to the DOC Secretary (appeal labeled as Grievance No. 14-6-39574) dated December 3, 2014, I explained that I did not cancel my appointment with Dr. Jehaimi, but rather I did not attend my appointment because I was in jail. Specifically, I wrote:

> I am transgender, and was receiving Hormone Replacement Therapy at the time of my arrest; Sept. 23rd, 2013. The medication I was receiving was Spironolact, and also Estradiol; the dosages are in my medical records but I do not remember, and the staff has declined to tell me the exact amounts. According to statute 3.48 of the Inmate Rights Handbook, a transgender inmate who was receiving Hormone Therapy is supposed to continue receiving hormone therapy. The staff at the Desoto Annex are well acquainted with the records that prove I was rec[ei]ving treatment for hormone therapy, but refuse to reinstate this medication; by statute 3.48 this can be grounds for cruel and unusual punishment, as it demonstrates willful indifference to a very serious medical and psychological condition that <u>cannot</u> be treated with counseling alone. The reason given by the DeSoto staff is invalid; I did not cancel my appointment, as I was incarcerated in

Lee County Jail and was unable to make any such cancellation. There is no documentation which I have signed which would negate this treatment – in fact the only documentation is of my struggle to have this treatment which has been unlawfully suspended restored . . . . It is absolutely necessary to me that I have my treatment restored to me; it is a severe breach of the constitutional ban on cruel and unusual punishment to refuse a treatment plan that was determined to be necessary by a team of doctors prior to my incarceration solely on the basis of being arrested; the necessity of this treatment has not changed in the past year, and it never will – I will always need it. Therefore the burden of providing close endocrine supervision to accompany the treatment falls to the DoC. There is no lawful way for my treatment to be denied; this means that the DoC must provide all parts of this hormone therapy, as it is cruel and unusual punishment to forbid it, and the fact that it requires close supervision is neither here nor there; the burden of care falls to the DoC and it is wholly unconstitutional to deny treatment solely because the DoC does not want to pay for it. Please see to it that this unconstitutional denial of treatment is not allowed to continue.

23.   On December 9, 2014, I filed a grievance directed to Dr. Sicilia, stating:

I would like to schedule an appointment to discuss the psychological necessity of myself dressing as a female, and the availability of a pass for this way of dressing. I have, for the past 6 years consecutively, always dressed in a way that presents me as female in appearance through the use of padded bras, etc. For me, this is a necessary facet of my life, and deeply ingrained in my personality. In the treatment of a trangendered person, this behavio[r] is not only encouraged, but required as a prerequisite for the prescription of hormone replacement therapy [and] sexual reassignment surgery – I have lived my entire life past the age of 13 as female, and it is extremely detrimental to my mental health to forbid this practi[c]e; it is also well documented as a legitimate and proper treatment for a person who is transgender. As I am transgender, I should rec[ei]ve a pass to allow me to continue this behavior for my wellbeing. This is part of who I am – it is not the place of the DoC to try to change the fact that I am transgender. That is not able to be changed. It is the job of the government to accommodate the needs of all persons in their care.

24.   On January 8, 2015, I cut my scrotum with a razor. I told the officials that the reason I attempted self-castration was because of their failure to provide me with treatment for my Gender Dysphoria.

25.   My understanding is that I was then transferred to Charlotte CI because I had engaged in genital mutilation and had indicated that I would do it again. I regularly met with

mental-health staff at Charlotte CI, and the main topic of discussion in those meetings was my transgender status and need for medical treatment.

26. In March 2015, I received a denial (dated January 23, 2015) of my appeal (Grievance No. 14-6-39574), with no reason given other than an affirmation of the response from Dr. Le on November 20, 2014.

27. In February 2015, I was transferred from Charlotte CI to Dade CI.

28. In April 2015, I was transferred from Dade CI to the Charlotte County Jail. I had been charged with tampering with a security device following events that occurred during my stay at Charlotte CI. After a jury trial in December 2015, I was acquitted and was sent back to Dade CI.

29. On December 29, 2015, I filed a formal grievance directed to the "chief medical officer" at Dade CI (Grievance No. 1601-463-009), stating:

> I suffer from Gender Dysphoria, a recognized neurological condition in which a person's gender identity is not consistent with the biologically assigned sex. The standard treatment is as follows: 1) the patient must be able to live and dress as the gender with which they identify[,] 2) hormone therapy, 3) gender confirmation surgeries [and] procedures[.] [F]ailure to provide full treatment for this medical issue is unconstitutional, in violation of the 8th amendment. This is a serious medical need that has been properly diagnosed and brought to the attention of medical staff numerous times. To continue the refusal of any and all treatment is unacceptable and unconscionable, with no excuse – my symptoms include severe depression, anxiety, fatigue, and eating disorders. Additionally, other symptoms that can occur are self-injury, rage, addiction, and suicide, in the most severe instances. Furthermore, I suffer from an extremely low testosterone count, which compounds my symptoms and would also be remedied by the hormone therapy part of treatment. Further denial of treatment will constitute willful negligence to my medical needs.

30. On December 31, 2015, I filed an informal grievance (No. 463-1601-0062) at Dade CI, stating:

> On 12-16-15, when I arrived at Dade CI TCU, I had 2 personal sports bras and 3 set of female undergarments that were confiscated unjustly and removed from my

property as contraband. I am a transgender female and am not comfortable wearing male underwear—it is discrimination on the basis of sex or gender to force a person to act in a certain way because of their sex, and therefore it is unconstitutional for me to be forced to wear men's underwear. There is no valid safety concern as the female underwear is made of the same materials as the male sort and is the same as the underwear issued in female prisons, where it clearly cannot be a safety concern; therefore the basis for it being confiscated was "disciplinary", in that I am classified as male and must therefore do what males "are supposed to do." This is unconstitutional in nature, and I request that either my personal clothing be returned or that proper female underwear be issued in its place.

31. On a document dated, January 5, 2016, this informal grievance (No. 463-1601-0062) was denied in an unsigned response that contains the stamp of the Assistant Warden of Programs and states: "At a male institution only T-Shirts, Boxers, Pants, and Blue Shirts are authorized. Any other clothing is unauthorized."

32. On a document dated January 19, 2016, Dr. Carmelo Berrios, M.D., medical director of Dade CI, denied my formal grievance from December 29, 2015 (Grievance No. 1601-463-009), stating:

> Your formal grievance has been received and reviewed. You will be called out to sign a release of information for the endocrinologist that was seeing you before incarceration to obtain the medical records to get the full history of treatment. Once records are received Dr. Berrios will review and determine the necessary treatment plan.

33. On February 2016, I was transferred from Dade CI to the South Florida Reception Center and then to Everglades CI.

34. Around February 29, 2016, I met with the medical director of Everglades CI, Dr. Teresita Dieguez, M.D. I had at the time, and continue to have, a copy of all of my medical records documenting my Gender Dysphoria. When Dr. Dieguez told me that she needed my medical records documenting my Gender Dysphoria, I had them with me and offered to provide them immediately. Dr. Dieguez refused to look at them. I also informed Dr. Dieguez that records

documenting my Gender Dysphoria were already in my green medical file, which itself was also in the room. Dr. Dieguez refused to look at those records as well. Dr. Dieguez refused to discuss my transgender status with me. Instead, Dr. Dieguez told me, "you are only here so I can determine the state of your genitals."

35. Before the meeting with Dr. Dieguez, I had been housed alone at Everglades CI. After the meeting with Dr. Dieguez, I was assigned a roommate. The housing sergeant told me that this was because "medical" said that I am not transgender.

36. Around March 15, 2016, I met again with Dr. Dieguez. Dr. Dieguez told me that she could not do anything for me regarding my request for treatment for Gender Dysphoria, that all she could do is refer me to the mental-health department. Dr. Dieguez also told me that she would refer me to the regional medical director.

37. Around March 21, 2016, I met with Andre Rivero in the mental-health department of Everglades CI. Mr. Rivero told me that he agreed with the diagnosis of Gender Dysphoria and recommended hormone therapy, but he said that my symptoms could only be treated by the medical department. He thus referred the matter back to the medical department. The following day, I met with my mental-health counselor, Sonele Baute, who agreed with the diagnosis and the appropriateness of hormone therapy for me. Ms. Baute told me that a meeting between the medical and mental-health departments would take place on March 24, 2016, to discuss the issue. That same week, Dr. Arnice Johnson of Everglades CI also told me that she agreed with the diagnosis and the appropriateness of hormone therapy for me.

38. On May 4, 2016, I filed a formal grievance (Grievance No. 1605-401-009) directed to the "chief medical officer" at Everglades CI, stating:

> I am transgender, with a formal diagnosis of Gender Identity Disorder by Dr[.] Omar Rieche, and was prescribed Hormone Replacement therapy through him

and one Dr[.] Cayce Jehaimi for this condition. Specifically, I was prescribed Estradiol [and] Spironolactone, and rec[ei]ved both prior to my incarceration. While incarcerated, I have not rec[ei]ved this treatment, or any treatment whatsoever for my Gender Identity Disorder, despite the fact that it has been clearly established in my medical records and confirmed as my diagnosis by psychiatric doctors Arnise Johnson [and] Andre Rivera at this institution. This is a violation of the 8th amendment, which prohibits cruel and unusual punishment by means of willful negligence towards a person's medical needs, and a violation of Federal Inmate Rights Statute 3.48 which specifically names Gender Identity Disorder as a medical condition requiring treatment, and states that a person who was rec[ei]ving Hormone Replacement therapy for Gender Identity Disorder must have that treatment continued while incarcerated. I experience severe depression, fatigue, anxiety, body-image disorders, fear, eating disorders, persecution, a constant state of unease, and self-harming behaviors, including a history of genital mutilation, as a result of this lack of treatment. The standard treatment, which I require, is as follows; 1) the ability to live as the gender I identify as (female) in all aspects of life[;] 2) Hormone therapy (aforementioned)[;] 3) Gender-confirmation Surgery[.] Continued failure to provide all of the above constitutes a willful indifference to the constant, daily suffering I experience, and is a clear violation of my 8th amendment right to rec[ei]ve medical care.

39.    On a document dated May 18, 2016, Dr. Dieguez denied this grievance (Grievance No. 1605-401-009), stating:

Your request for administrative review has been received, reviewed and evaluated. In order to be diagnosed for Gender Dysphoria treatment evaluations of your pre-incarceration treatment records including but not limited to: a. hormone therapy; b. completed or in-process surgical procedures; c. life experiences consistent with the inmate's gender identity; and d. mental health history. [*sic*] Please submit a request to medical records to sign an authorization ('Consent and Authorization for Use and Disclosure Inspection and Release of Confidential Information,' DC4-711B) for the release of information for all pertinent outside medical and mental health records related to your Gender Dysphoria. Based on the above information, your grievance is DENIED.

40.    I have signed the referenced release form for the DOC at least twice. One such release form is dated 8/21/14. Another, signed by me while I was at Dade CI, is dated 1/7/16. Before signing that release, I was told by a record custodian at Dade CI that the DOC already had the relevant records but that I needed to sign the release again so that the DOC could continue to access them.

41.     On May 24, 2016, I filed an appeal of the denial of Grievance No. 1605-401-009 to the DOC Secretary (appeal labeled as Grievance No. 16-6-23873), stating:

> I am transgender and face serious, needless suffering on a daily basis. The reason given for denial of medical treatment (that I must submit my medical records) is blatant and false. All of my relevant medical history has already been submitted to the staff of ECI, and I have also previously signed this release of medical records. My records show that I was formally diagnosed with Gender Identity Disorder, and as the result of that I had begun hormone therapy. This diagnosis has also been confirmed by the mental health staff at this facility. Considering that I have this diagnosis as well as very clear records that show I was prescribed hormone therapy and had lived as female for the majority of my life, this denial is based on no actual issue, and therefore is a case of willful indifference to my serious medical need for treatment. The treatment I require is as follows: 1. The ability to live as the gender I identify as (female)[;] 2. Hormone therapy[;] 3. Gender-confirmation Surgery. By not providing the necessary treatment, I am subjected to extreme discomfort, fear, depressions, fatigue, body image issues. As the records prove I was diagnosed and began treatment, this facility is in violation of Federal Inmate's Rights Statute 3.48, and in violation of the 8th amendment right not to be punished in a cruel or unusual manner. Refusal to provide medical treatment is a clear violation of both of these laws, as it is an obvious case of willful indifference.

42.     My appeal was "returned without action" with a date of July 1, 2016. The response states:

> Appeal Returned without Action: Your administrative appeal has been received and found to be in non-compliance with Rule 33-103, Inmate Grievance Procedure. This grievance presents the same issue as grievance log #14-6-39574. Per Rule 33-103.014(1)(q), grievances may be returned to the inmate without further processing if the inmate has filed more than one appeal of a grievance. Records reviewed indicate that you are still being followed by mental health. Based on the above information, your appeal is returned without action.

43.     More than two years after my first request—two years of repeatedly explaining my prior Gender Dysphoria diagnosis, the fact that I lived as female prior to incarceration, and my prescription for hormones (and signing releases to provide records documenting this) and informing the DOC of the significant harm I am experiencing as a result of this treatment being withheld—the DOC has done nothing to provide me with

my medically necessary care of hormone therapy and access to female dressing and grooming standards.

44.     Every day that goes by without appropriate treatment, I experience significant distress.

45.     I cannot imagine surviving without hormone therapy and the ability to live consistent with my female gender by being permitted access to female clothing and grooming standards.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 12, 2016.

_____
Reiyn Keohane