UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

TALLAHASSEE DIVISION

CASE NO.: 4:16cv511-MW/CAS

REIYN KEOHANE,

              Plaintiff,

v.

JULIE JONES in her official capacity as
Secretary, Florida Department of
Corrections, and TERESITA DIEGUEZ,
in her official capacity as Medical
Director of Everglades Correctional
Institution,

              Defendants.

## DEFENDANT, TERESITA DIEGUEZ'S, RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Defendant, TERESITA DIEGUEZ, responds in opposition to Plaintiff's Motion to Compel (Doc. 71), and states as follows:

### BACKGROUND

Plaintiff filed a Motion to Compel in which she argues that Dr. Dieguez did not "fully respond to the interrogatories and requests for production and admission propounded by Plaintiff on November 17, 2016." (Doc. 71). As an initial matter, Plaintiff filed this Motion without having a meaningful conference as required by Local Rule 7.1(B). Had Plaintiff done so, perhaps some of these issues could have been resolved. Instead, Plaintiff chose to file the Motion to Compel in which she alleges Dr. Dieguez's

---

responses are "improper," "recalcitrant," "inexcusable," and that they misrepresent facts, among other allegations. Dr. Dieguez responds to these arguments in turn.

Plaintiff first raised two concerns with Dr. Dieguez's discovery responses by e-mail on Friday, January 6, 2017. (Exhibit 1). Dr. Dieguez's undersigned counsel was out of the office most of the day at a deposition in West Palm Beach followed by other pending client matters. Accordingly, Dr. Dieguez's undersigned counsel promptly responded to Plaintiff's e-mail the next day, Saturday, January 7, 2017, seeking clarification on Plaintiff's two concerns. (Exhibit 1). Dr. Dieguez's undersigned counsel further advised Plaintiff's counsel that he had limited availability on Monday, but offered to discuss these concerns in greater detail on Tuesday morning. (Exhibit 1). Plaintiff's counsel responded by e-mail on Sunday, January 8, 2017, specifying that he was referring to responses to Requests for Production numbers 2, 3, 9, 10 and 11. (Exhibit 1). Plaintiff's counsel never attempted to call Dr. Dieguez's counsel at any time on Monday or Tuesday. Instead, Plaintiff filed the instant 24 page Motion to Compel on Tuesday, which also included a request for sanctions. (Doc. 71).

## REQUESTS FOR ADMISSION

After Dr. Dieguez served her responses to Plaintiff's Requests for Admission on December 23, 2016, Plaintiff never informed Dr. Dieguez that there were any issues with Dr. Dieguez's responses, let alone that they were "improper" as Plaintiff alleges in her Motion. For the first time in her Motion, Plaintiff cites 15 Requests for Admission, to

which she argues Dr. Dieguez's responses are "improper." Aside from Plaintiff's failure to attempt to conduct a meaningful discovery conference as required by Local Rule 7.1(B) and paragraph 7 of this Court's Initial Scheduling Order (Doc. 59), Plaintiff is also substantively incorrect on the "official-capacity issue" for the reasons further explained in this response.

## REQUESTS FOR PRODUCTION

While Plaintiff initially raised two concerns as to certain Requests for Production (2, 3, 9, 10 and 11) to which Dr. Dieguez sought clarification (Exhibit 1), Plaintiff's Motion to Compel argues that all 17 of Dr. Dieguez's responses are "improper." Had Plaintiff spoken with Dr. Dieguez's counsel on Tuesday morning before filing this Motion, perhaps Plaintiff would not have misconstrued or misrepresented Dr. Dieguez's position on the personal possession or knowledge issue. Plaintiff argues that Dr. Dieguez "refused to provide documents and information that were not within her personal possession or knowledge despite the fact that she was sued in her official capacity." This is not an accurate statement of Dr. Dieguez's position. Dr. Dieguez admits she is being sued in her Official Capacity as Medical Director of the Everglades Correctional Institution, and because of her position, her obligations to respond to discovery are as such. If Dr. Dieguez was taking the position which Plaintiff represents she is taking, she would have provided very limited information, if any. Dr. Dieguez is not part of

Plaintiff's primary treatment team and has never had any interaction with Plaintiff outside of her capacity as Everglades Medical Director.

## INTERROGATORIES

Like Plaintiff's failure to ever inform Dr. Dieguez that there were any issues with Dr. Dieguez's responses to her Requests for Admission, Plaintiff never informed Dr. Dieguez that there were any substantive issues with her responses to Plaintiff's Interrogatories.[1] Plaintiff raises three responses to interrogatories which she argues are "improper." Dr. Dieguez address those substantive concerns in this response.

## THE OFFICIAL CAPACITY ISSUE

Plaintiff cites three cases for the general proposition that an official capacity suit is a suit against the entity itself. Plaintiff fails to cite any case law suing a "DOC Official" in their official capacity, while simultaneously claiming that the actual entity being sued is a non-party. None of Plaintiff's cited are analogous to this one or involve a correctional health care provider. While Dr. Dieguez agrees that Plaintiff's claims against her are brought in her official capacity, Plaintiff incorrectly concludes that the official capacity lawsuit is against non-party Wexford Health Sources, Inc. The record does not support Plaintiff's position.

---

[1] Plaintiff's argument that she did not receive the signature page with the responses is not a substantive objection. Unfortunately, due to influenza and printer issues, it took Dr. Dieguez an additional few days to provide the signature page to the undersigned. Dr. Dieguez's executed signature page has since been provided to Plaintiff.

One need only look at the case style to determine that Wexford is not a party to this case. Plaintiff has sued two Defendants: Florida Department of Corrections Secretary Julie Jones and Everglades Correctional Institution Medical Director Teresita Dieguez. Wexford is not mentioned a single time in Plaintiff's 98 paragraph complaint. (Doc. 1). Rather, Plaintiff's allegations make clear that Plaintiff's target Defendant is Secretary Julie Jones in her Official Capacity as Secretary of the Florida Department of Corrections (DOC), of which Plaintiff considers Dr. Dieguez a part. Specifically, Plaintiff "brings this action to compel Defendants (collectively, "the DOC") to treat her serious medical need consistent with its constitutional obligations under the Eighth Amendment to the United States Constitution." (¶ 1).[2]

Plaintiff's Complaint makes clear that she is challenging "[t]he DOC's Policy Concerning Treatment of Gender Dysphoria." (¶¶ 85-86). Plaintiff alleges the DOC is denying her treatment for her gender dysphoria pursuant to "DOC Procedure Number 602.053, Specific Procedure (2)(a)5," which Plaintiff refers to as the "freeze-frame policy." *Id.* Plaintiff further alleges that Defendant Secretary Jones is "responsible for enforcement of the DOC's Procedure Number 602.053, Specific Procedure (2)(a)5., the "freeze-frame" policy that is challenged in this lawsuit and that is discussed further

---

[2] Plaintiff initially sued two additional Defendants: (1) Trung Van Le, in his official capacity as Chief Health Officer of the Desoto Annex; and (2) Francisco Acosta, in his official capacity as Warden of Everglades Correctional Institution. The Court dismissed these Defendants. (Doc. 50).

below." (¶¶ 7, 95). Throughout Plaintiff's sole alleged cause of action in Count I, Plaintiff refers to Dr. Dieguez as a "DOC official." (¶¶ 89, 91-93, 97). Finally, in her Prayer for Relief, Plaintiff seeks relief against the "DOC." (¶ 98).

No cause of action is asserted against Wexford. For Plaintiff to allege a cause of action against Wexford, Plaintiff would need to allege that Wexford, not the DOC, had a policy of denying treatments to inmates with gender dysphoria. *See Fields v. Corizon Health, Inc.*, 490 Fed. Appx. 174, 182 (11th Cir. 2012) citing *McDowell v. Brown*, 392 F. 3d 1283, 1289 (11th Cir. 2004) (holding that a private entity that provides medical services to prisoners can be held liable "only if it had a 'custom or policy that constituted deliberate indifference to [a] constitutional right.'" (emphasis added). As discussed above, it is clear from Plaintiff's Complaint that she is challenging the DOC's alleged "freeze-frame policy," which Dr. Dieguez denies she enforces. (Response to Requests for Admissions #2 and #3). Because there is no alleged Wexford policy that constituted deliberate indifference to a constitutional right in this lawsuit, Plaintiff cannot claim that Wexford is actually the entity being sued.

Because Dr. Dieguez is being sued in her official capacity for an alleged section 1983 violation, there is additionally no basis to hold Wexford liable for Dr. Dieguez's alleged constitutional violations under a theory of respondeat superior or vicarious liability. *See, e.g., Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402

F.3d 1092, 1116 (11th Cir. 2005) (citing *City of Canton v. Harris,* 489 U.S. 378, 385

(1989) ("*Respondeat superior* or vicarious liability will not attach under § 1983.").

Finally, Plaintiff alleges that Dr. Dieguez is misrepresenting Dr. (Marlene)

Hernandez's status as a non-party to this case. (Doc. 71 FN 1). Once again, one need

only look at the case caption to show this allegation to be false. And again, as with

Wexford, Dr. Marlene Hernandez's name does not appear anywhere in Plaintiff's 98

paragraph Complaint. (Doc. 1). Merely because Dr. Hernandez attended the public

preliminary injunction hearing does not make her a party to this case. Plaintiff's parents

also attended the preliminary injunction hearing, but no one is arguing they are also

parties to this case.

## THE DATES OF RECORDS ISSUE

After receiving clarification from Plaintiff and considering the production of

records, Dr. Dieguez agreed to amend her responses to request for production #3, #4 and

#7 concurrently with this response.

## SPECIFIC REQUESTS FOR ADMISSION AND DR. DIEGUEZ'S RESPONSES

2) Admit that the first sentence of Procedure Number 602.053,
Specific Procedure (2)(a)5. ("Inmates who have undergone treatment
for GD will be maintained only at the level of change that existed at
the time they were received by the Department.") is enforced by
Wexford.

RESPONSE: Objection, seeks an admission from a non-party. Dr.
Dieguez denies that she enforces that procedure or that the procedure
is enforced at Everglades Correctional Institution.

3) Admit that the first sentence of Procedure Number 602.053,
Specific Procedure (2)(a)5. ("Inmates who have undergone treatment
for GD will be maintained only at the level of change that existed at
the time they were received by the Department.") is not enforced by
the Wexford.

RESPONSE: Objection, seeks an admission from a non-party. Dr.
Dieguez admits that she does not enforce that procedure and that the
procedure is not enforced at Everglades Correctional Institution.

Responses #2 and #3 are appropriate because Wexford is not a party to this lawsuit.

Dr. Dieguez denied that she enforces the procedure or that the procedure is enforced at

Everglades Correctional Institution.

4) Admit that, during the time Plaintiff has been in the custody of the
DOC, Plaintiff did not meet with an endocrinologist prior to meeting
with Dr. Angueira-Serrano on September 2, 2016.

RESPONSE: Dr. Dieguez admits that Plaintiff's first visit to an
endocrinologist while at Everglades Correctional Institution was with
Dr. Angueira-Serrano on September 2, 2016. Dr. Dieguez is without
knowledge as to Plaintiff's treatment before arriving at Everglades
Correctional Institution.

Response #4 is appropriate because Dr. Dieguez is suing her in her official capacity as

Medical Director of Everglades Correctional Institution. As Everglades Medical

Director, Dr. Dieguez does not have personal knowledge of Plaintiff's treatment or

alleged non-treatment at other facilities. Dr. Dieguez is aware that Plaintiff first saw an

endocrinologist at Everglades on September 2, 2016.

5) Admit that no DOC inmate with a penis is incarcerated in a
women's facility.

RESPONSE: Dr. Dieguez is without knowledge of this request. She does not have access to this information.

6) Admit that at least one DOC inmate with a penis is incarcerated in a women's facility.

RESPONSE: Dr. Dieguez is without knowledge of this request. She does not have access to this information.

7) Admit that whether or not an inmate has a penis determines whether they are housed in a men's facility or a women's facility while in the custody of the DOC.

RESPONSE: Dr. Dieguez is without knowledge of this request. She does not have access to this information.

Responses #5 through #7 are appropriate because they seek admissions from Dr. Dieguez on matters of DOC policy and classification. Everglades Correctional Institution is a men's facility. Therefore, Dr. Dieguez cannot admit or deny requests directed towards women's facilities throughout Florida.

9) Admit that Wexford has never denied an inmate medically necessary care to prevent death or serious harm because it deemed the provision of such care to present a security concern.

RESPONSE: Objection, seeks an admission from a non-party. Dr. Dieguez is not aware of such a denial of medically necessary care.

10) Admit that if providing medically necessary care to an inmate to prevent death or serious harm created a security concern, Wexford would not deny the inmate the needed care.

RESPONSE: Objection, seeks an admission from a non-party and calls for speculation. Dr. Dieguez is not aware of such a denial of medically necessary care.

11) Admit that if providing medically necessary care to an inmate to prevent death or serious harm created a security concern, Wexford would deny the medical care even though doing so would endanger the life of the inmate.

RESPONSE: Objection, seeks an admission from a non-party and calls for speculation. Dr. Dieguez is not aware of such a denial of medically necessary care.

12) Admit that no Wexford employee assessed whether access to female undergarments and grooming standards was medically necessary for Plaintiff until September 27, 2016, when Dr. Santeiro met with Plaintiff.

RESPONSE: Objection, seeks an admission from a non-party and calls for speculation. Dr. Dieguez states that she did not make such an assessment.

Responses #9 through #12 are appropriate because they seek admissions from non-party Wexford. Moreover, Dr. Dieguez is only a Medical Director of one facility, and does not have knowledge of other facilities or what Wexford might decide in hypothetical situations. Dr. Dieguez is not a Wexford corporate officer and is not being sued as such. Rather, she is being sued in her capacity as the Medical Director of Everglades, and is not aware of the requests referenced occurring at Everglades.

15) Admit that Dr. Marlene Hernandez does not have expertise in the treatment of Gender Dysphoria.

RESPONSE: Objection, seeks an admission from a non-party.

16) Admit that Dr. Trung Van Le does not have expertise in the treatment of Gender Dysphoria.

RESPONSE: Objection, seeks an admission from a non-party.

USDC Case No. 4:16cv511-MW/CAS
Page 11

_____

18) Admit that Dr. Jose Santeiro does not have expertise in the treatment of Gender Dysphoria.

RESPONSE: Objection, seeks an admission from a non-party.

Responses #15, #16, and #18 are appropriate because Dr. Marlene Hernandez, Dr. Trung Van Le, and Dr. Jose Santeiro are not parties to this lawsuit. Moreover, whether any of the Doctors are experts can be determined by the Court from deposition testimony, affidavits, or qualifications.

19) Admit that medical or mental-health providers who care for inmates in DOC custody have no ability to obtain access to female clothing or grooming standards for inmates in men's facilities who have Gender Dysphoria even if they deem such access necessary to address a serious medical need.

RESPONSE: Objection, calls for speculation and seeks an admission from a non-party.

20) Admit that medical or mental-health providers who care for inmates in DOC custody could request an exception to prison policy to allow an inmate with Gender Dysphoria to access female undergarments and grooming standards if they deem such access necessary to address a serious medical need, and that such request could be granted if approved by DOC officials.

RESPONSE: Objection, calls for speculation and seeks an admission from a non-party.

Responses #19 and #20 are appropriate because Plaintiff seeks an admission from Dr. Dieguez as to DOC policies, which it is undisputed that Dr. Dieguez does not enforce.

## SPECIFIC REQUESTS FOR PRODUCTION AND DR. DIEGUEZ'S RESPONSES

USDC Case No. 4:16cv511-MW/CAS
Page 12

_____

    1) All documents disclosed pursuant to Fed. R. Civ. P. 26(a)(1) by Wexford in the initial disclosures, as supplemented.

RESPONSE: None. Wexford is not a party to this lawsuit.

Response #1 is appropriate because Wexford is not a party to this lawsuit and therefore, is not required to provide initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1).

    2) All communications and documents described, referenced, identified, relied upon, or detailed in an answer to any interrogatory or request for admission.

RESPONSE: None.

Response #2 is appropriate because Dr. Dieguez did not rely on any such documents to respond to an interrogatory.

    3) Plaintiff's "green" folder/chart/jacket (*see* Hernandez Dep. (Doc. 42-1) at 9-10; Dieguez Dep. (Doc. 40-1) at 19), separately labeled from other produced records.

RESPONSE: See attached.

    4) Plaintiff's "blue" folder/chart/jacket (see Hernandez Dep. (Doc. 42-1) at 9-10; Dieguez Dep. (Doc. 40-1) at 19), separately labeled from other produced records.

RESPONSE: See attached.

As referenced in the cited depositions, the "green" and "blue" folders referred to the existence of documents before Plaintiff filed suit. Nonetheless, Dr. Dieguez has agreed to amend these responses concurrently with this response to also include the current records.

5) All documents reflecting or concerning communications regarding Plaintiff involving any individual listed in response to Interrogatory no. 2.

RESPONSE: There are no individuals named in this Defendant's Answer to Plaintiff's Interrogatory Number 2, therefore none.

6) All documents reflecting or concerning communications regarding the standards of care for treating Gender Dysphoria involving any individual listed in response to Interrogatory no. 2.

RESPONSE: There are no individuals named in this Defendant's Answer to Plaintiff's Interrogatory Number 2, therefore none.

Responses #5 and #6 is appropriate because Dr. Dieguez did not rely on any such documents to respond to an interrogatory.

7) All documents reflecting or concerning any communications between Dr. Marlene Hernandez or Dr. Jose Santeiro or any other prison medical or mental-health provider involved in evaluating or treating Plaintiff's Gender Dysphoria and outside medical or mentalhealth experts or out-of-state prison medical or mental-health personnel regarding Plaintiff and/or the treatment of Gender Dysphoria.

RESPONSE: No such documents in Dr. Dieguez's possession before Plaintiff filed the instant lawsuit.

Dr. Dieguez has agreed to amend these responses concurrently with this response to also include the current records. Any communications between Dr. Marlene Hernandez and Dr. Jose Santeiro which post-date the lawsuit are attorney-client and work product privileged based on advice of counsel as it pertains to the ongoing case and treatment of the subject Plaintiff.

8) All documents written by or received by Dr. Jose Santeiro regarding Plaintiff, other inmates who are transgender and/or have Gender Dysphoria, and/or the standards of care for treating Gender Dysphoria.

RESPONSE: Objection. Request seeks information from non-party and confidential medical information of non-parties. Without waiving said objection, none in Dr. Dieguez's possession.

Response #8 is appropriate because any correspondence between Dr. Jose Santeiro and undersigned counsel concerning the Plaintiff are attorney-client privileged. Plaintiff is not entitled to the confidential medical information of other patients.

9) All documents – including emails – sent by or to any Wexford employee discussing or regarding the first sentence of Procedure Number 602.053, Specific Procedure (2)(a)5. ("Inmates who have undergone treatment for GD will be maintained only at the level of charge that existed at the time they were received by the Department.").

RESPONSE: Objection. Request seeks information from non-party and confidential medical information of non-parties. Without waiving said objection, no such documents are in Dr. Dieguez's possession before Plaintiff filed the instant lawsuit.

10) All documents – including emails – sent by or to any Wexford employees in Florida discussing policy or practice regarding the treatment of inmates with Gender Dysphoria.

RESPONSE: Objection. Request seeks information from non-party and confidential medical information of non-parties. Without waiving said objection, no such documents are in Dr. Dieguez's possession before Plaintiff filed the instant lawsuit.

11) All documents concerning requests by other inmates at men's facilities for access to female undergarments and/or grooming standards and the responses to such requests.

USDC Case No. 4:16cv511-MW/CAS
Page 15

---

> RESPONSE: Objection. Request seeks information from non-party
> and confidential medical information of non-parties. Without waiving
> said objection, no such documents are in Dr. Dieguez's possession
> before Plaintiff filed the instant lawsuit.

Responses #9, #10 and #11 are appropriate because Wexford is a non-party and

Plaintiff is not entitled to the confidential medical information of other patients.

> 12) All documents discussing or regarding hair lengths rules at men's
> facilities, including but not limited to any requests made for
> exemptions and any exemptions granted.
> RESPONSE: Dr. Dieguez is not authorized to enforce, or make
> exceptions to, any alleged rules on hair length. She does not maintain
> this information.

> 13) All statutes, rules, regulations, policies, and/or procedures relating
> to the decision not to permit Plaintiff to wear female undergarments
> permitted in DOC women's facilities and/or grow her hair out to a
> length not permitted in DOC men's facilities.

> RESPONSE: Dr. Dieguez is not authorized to enforce, or make
> exceptions to, any alleged rules on hair length. She does not maintain
> this information.

Earlier in Plaintiff's Motion, she argues that the actual entity being sued is Wexford

Health Sources. But in certain requests such as #12 and #13, Plaintiff argues that Dr.

Dieguez is actually being sued in her official capacity as the "DOC." Dr. Dieguez

cannot simultaneously be the "DOC" and non-party Wexford. Responses #12 and #13

are appropriate because Dr. Dieguez is not authorized to enforce, does not enforce, and

cannot make exceptions to DOC policies. As Plaintiff's Complaint alleges, Defendant

Jones is responsible for enforcement of DOC policies. (Doc. 1).

14) All documents concerning actual or potential conflicts between an inmate's need for medical care and security needs.

RESPONSE: Objection. Request is vague and may seek confidential medical information of non-parties. Dr. Dieguez is not aware of any conflict with Plaintiff's medical care.

Response #14 is appropriate because Dr. Dieguez is not aware of any such conflict with Plaintiff's medical care which vaguely includes "security needs."

15) All documents discussing or reflecting exceptions to any DOC policies or practices made in order to meet the medical need of an inmate.

RESPONSE: Objection. Dr. Dieguez is not a DOC employee and does not have documents which reflect DOC policies or practices regarding inmate exceptions.

Earlier in Plaintiff's Motion, she argues that the actual entity being sued is Wexford Health Sources. But in certain requests such as #12 and #13, Plaintiff argues that Dr. Dieguez is actually being sued in her official capacity as the "DOC." Dr. Dieguez cannot simultaneously be the "DOC" and non-party Wexford. Response #15 is appropriate because Dr. Dieguez does not have information concerning DOC exceptions.

16) All documents that reflect the facts or data that Wexford provided to its expert witnesses and that the experts considered in forming the opinions to be expressed – including any experts to be disclosed by the December 2016 expert-disclosure deadline.

RESPONSE: Objection. This request seeks information from a nonparty.

17) All documents that reflect assumptions that Wexford provided to

its expert witnesses and that the expert relied on in forming the opinions to be expressed – including any experts to be disclosed by the December 2016 expert-disclosure deadline.

RESPONSE: Objection. This request seeks information from a nonparty.

Responses #16 and #17 are appropriate because Wexford is not a party. Therefore, Wexford does not have any obligations under Federal Rule of Civil Procedure 26.

### SPECIFIC INTERROGATORIES AND DR. DIEGUEZ'S RESPONSES

5.  Identify all individuals who would be involved in a determination whether Plaintiff's medical need to grow her hair out beyond what is permitted by the hair-length policy for DOC men's facilities and wear female undergarments overrides any security concerns related to granting such permission. *See* Kirkland Dep. (Doc. 37-1) at 41-42.

**ANSWER:**
Objection, Dr. Dieguez is not a DOC employee and does not have access to this information.

Response #1 is appropriate because Dr. Dieguez is not a DOC employee and does not have access to this information. Once again, Plaintiff claims that Dr. Dieguez is being sued in her official capacity as Wexford, the DOC, or as the Medical Director of Everglades Correctional Institution, depending on what type of information Plaintiff seeks. This cannot be the case. Plaintiff argues that Defendant Jones's objections somehow affect Dr. Dieguez because "someone has access to this information, and Wexford and DOC both cannot refuse to answer." Neither Wexford nor its employees as a whole are a party to this lawsuit.

2. Identify all DOC or Wexford personnel who were involved in

Case 4:16-cv-00511-MW-CAS   Document 76   Filed 01/17/17   Page 18 of 21

determining that Plaintiff does not have a serious medical need to
wear female undergarments and access female grooming standards.

**ANSWER:**
Dr. Dieguez is not aware of Plaintiff's medical treatment before
Plaintiff arrived at Everglades Correctional Institution. Before
Plaintiff filed the instant lawsuit, Dr. Dieguez was never informed by
the Plaintiff directly that Plaintiff was requesting medically necessary
female undergarments and medically necessary "access [to] female
grooming standards."

Response #2 is appropriate because it was never determined at Everglades Correctional

Institution that Plaintiff was requesting medically necessary female undergarments and

medically necessary "access to female grooming standards."

5. Separated by facility, identify the members of Plaintiff's treatment
team at each DOC facility in which she has been incarcerated.

**ANSWER:**
Dr. Dieguez is unaware of Plaintiff's treatment team at each facility
where Plaintiff resided prior to Everglades Correctional Institution.
Plaintiff's current treatment team includes: Dr. Arnise Johnson,
Sonele Baute, Andre Rivero-Guevara, and others who may assist as
needed.

Response #5 is appropriate because Dr. Dieguez does not have access to information

at facilities other than Everglades. She can speak for Plaintiff's current treatment at

Everglades. Further, she is not the "DOC," as Plaintiff argues.

## RESPONSE TO PLAINTIFF'S RELIEF REQUESTED

Plaintiff alleges that Dr. Dieguez provided "almost no information." This

conclusion is inexplicable because Plaintiff also acknowledges that Dr. Dieguez

USDC Case No. 4:16cv511-MW/CAS
Page 19

_____

produced 734 pages of documents, and provided responses to Plaintiff's Requests for

Admission and Interrogatories, despite Plaintiff's objections.

Plaintiff further seeks sanctions against Dr. Dieguez because certain records

which remained disputed due to objections were not provided before Plaintiff's

counsel's expert evaluation on January 9, 2017. As an initial matter, Plaintiff's counsel

never informed Dr. Dieguez's undersigned counsel that there was going to be an expert

evaluation on January 9, 2017 or that certain records were needed before that date. To

the extent that Plaintiff's expert conducted an evaluation based on incomplete

information, this is Plaintiff's counsel's own fault.

Plaintiff further argues that because her expert "may now have conducted an

evaluation of Plaintiff with incomplete information," Plaintiff requests Dieguez

reimburse Plaintiff for the expert's costs for a follow-up evaluation. In addition to the

reasons discussed above concerning Plaintiff failure to notify Dr. Dieguez's counsel of

the January 9, 2017 evaluation or that certain records were needed to perform the

evaluation, sanctions are further unjustified for the following reasons: First, while

Plaintiff does not refer to an expert by name, Plaintiff served a 30 page expert report

of Dr. George Brown, who stated that he conducted an evaluation of the Plaintiff on

January 9, 2017. Nowhere in Dr. Brown's report did he ever mention that he had

insufficient or incomplete records. Second, the nature of Plaintiff's medical treatment

is ongoing; therefore, Plaintiff's medical records will never truly be "complete" for the

purposes of review by an expert and subsequent evaluation. Third, there is no allegation that Dr. Brown inquired with on-site medical staff about additional medical records or ever sought additional records. Finally, Dr. Brown reserved the right to amend his conclusions as additional information may become available. Therefore, Plaintiff cannot viably claim that Dr. Brown's evaluation was somehow prejudiced by Dr. Dieguez.

Lastly, Plaintiff seems to focus on the fact that her counsel never agreed to a one-week extension until January 4, 2017 for Dr. Dieguez to provide her responses. Dr. Dieguez served her responses to the Requests for Admission on December 23, 2016 and requested the additional one week due to a previously planned vacation. (Exhibit 2). Plaintiff never objected to this request.

## CONCLUSION

Plaintiff is not entitled to the relief requested in her Motion to Compel, let alone sanctions, due to: (1) Plaintiff's failure to conduct a meaningful conference as required by Local Rule 7.1(B); (2) Dr. Dieguez's good faith legitimate objections to certain discovery requests; and (3) Plaintiff's counsel's own misunderstanding or misrepresentation of Dr. Dieguez's positions or the record facts in this case. To the contrary, as authorized by Federal Rule of Civil Procedure 37 and paragraph 6 of this Court's Initial Scheduling Order (Doc. 59), Dr. Dieguez seeks fees for her counsel's time spent in opposing this Motion to Compel.

WHEREFORE, Doctor Teresita Dieguez, in her Official Capacity as Medical Director of Everglades Correctional Institution, respectfully request this Court deny Plaintiff's Motion to Compel in all respects.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing was furnished to: **Daniel B. Tilley, Esq.**, dtilley@aclufl.org and **Nancy G. Abudu, Esq.**, nabudu@aclufl.org, *Attorneys for Plaintiff*, ACLU FOUNDATION OF FLORIDA, 4500 Biscayne Boulevard, Suite 340, Miami, Florida 33137, **Leslie Cooper, Esq.**, lcooper@aclu.org, ACLU FOUNDATION, *Attorneys for Plaintiff,* 125 Broad Street, 18th Floor, New York, NY 10004, and to **Matthew D. Grosack, Esq.**, matthew.grosack@dlaiper.com, *Attorneys for Plaintiff*, DLA PIPER LLP (US), 200 S. Biscayne Boulevard, Suite 2500, Miami, FL 33131; and to **Kirkland E. Reid, Esq.**, kreid@joneswalker.com, Daniel Russell, Esq., drussell@joneswalker.com, JONES WALKER LLP, 11 N. Water Street, Suite 1200, Mobile, AL 36602 by e-mail on January 17, 2017.

By: ___**s/Devang Desai**_____
DEVANG DESAI, ESQ. – FBN 664421
ddesai@gaebemullen.com
gbarker@gaebemullen.com (secondary)
DANIEL R. LAZARO, ESQ. – FBN 99021
dlazaro@gaebemullen.com
GAEBE,   MULLEN,   ANTONELLI   &
DIMATTEO
420 South Dixie Highway, 3rd Floor
Coral Gables, Florida 33146
Telephone (305) 667-0223
Facsimile (305) 284-9844
*Attorneys for Defendant Teresita Dieguez*