UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

Reiyn Keohane,

   Plaintiff,

v.          Case No. 4:16-cv-511-MW-CAS

Julie Jones,
*in her official capacity as*
Secretary of the Florida Department of Corrections,

Teresita Dieguez,
*in her official capacity as*
Medical Director of Everglades Correctional Institution,

   Defendants.

_____

## PLAINTIFF'S MOTION TO COMPEL

  By and through undersigned counsel, Plaintiff Reiyn Keohane ("Plaintiff") moves this Court to compel Defendant Jones to fully and more expeditiously respond to the requests for production and admission propounded by Plaintiff on November 17, 2016, and in support thereof states as follows:

### I.  Procedural History

  Plaintiff served composite discovery requests on Defendants Jones and Dieguez on November 17, 2016. Defendants' discovery responses were due thirty-

three (33) days from that date, which was December 20, 2016. On December 19, 2016, Defendant Jones requested an extension until December 22, 2016, to respond, to which Plaintiff assented. Although the responsive document was dated December 29, the response was indeed served on Plaintiff on December 22. Some of Jones's responses to Plaintiff's discovery requests cross-referenced responses from Defendant Dieguez; the referenced responses from Dieguez were not provided until January 5, 2017. On January 10, 2017, Plaintiff filed a motion to compel concerning Dieguez's responses. Doc. 71. The hearing on that motion was initially set for January 20, Doc. 73, but was rescheduled for January 25, Docs. 77-78. On January 20, 2017, Plaintiff's counsel emailed Jones's counsel to confer regarding a potential motion to compel against the DOC (email attached as Exhibit 1). On January 25, 2017, the Court denied Plaintiff's motion to compel against Dieguez, Doc. 81, but indicated at the hearing that Plaintiff would be able to get the discovery that she needs. On January 27, 2017, Plaintiff served Wexford Health Sources, Inc., with a subpoena requesting various documents, and served Jones with a second set of discovery requests. After various attempts to connect via telephone, Plaintiff's counsel spoke with Jones's counsel via telephone on January 25 and February 3 concerning Plaintiff's discovery needs and Jones's objections

related to Plaintiff's first composite discovery requests (the subject of this motion). Jones's counsel indicated that some of the information requested would be provided but that she maintained her objections to providing some of the information. Jones's counsel also indicated that, concerning some of the information that would be provided, Jones may need 60 days to produce the information.

## II.    <u>Standard</u>

Local Rule 26.1(D) states that a motion to compel "must frame the dispute clearly and, if feasible, must, for each discovery request at issue: (1) quote the discovery request verbatim; (2) quote each objection specifically directed to the discovery request; and (3) set out the reasons why the discovery should be compelled."

## III.    <u>Discussion</u>

Plaintiff will address in turn each of the responses to the requests for production.

<u>**REQUEST FOR PRODUCTION NO. 4**</u>: [sent Nov. 17, 2016]

All documents reflecting or concerning communications regarding Plaintiff involving any individual listed in response to Interrogatory no. 2. [Interrogatory No. 2: Identify all DOC or Wexford personnel who were involved in determining that Plaintiff does not have a serious medical need to wear female undergarments and access female grooming standards.]

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4**: [sent Dec. 29, 2016]

*See* Defendant Dieguez's response to Request for Production No. 5.

[Request for Production No. 5 to Defendant Dieguez and her response:] [response received Jan. 5, 2017]

5) All documents reflecting or concerning communications regarding Plaintiff involving any individual listed in response to Interrogatory no. 2.

RESPONSE: There are no individuals named in this Defendant's Answer to Plaintiff's Interrogatory Number 2, therefore none.

This response is improper because Jones provided no information whatsoever responsive to the request. Instead of providing the relevant information or stating why it would not be provided, she merely cross-referenced a document that did not

exist or at the very least was not provided to Plaintiff until a full week after Jones's response. Moreover, the response received by Dieguez also did not provide any information. Plaintiff is entitled to the information requested regardless whether another party has provided the information (which in this case was not done in any event).

**REQUEST FOR PRODUCTION NO. 5**: [sent Nov. 17, 2016]

All documents reflecting or concerning communications regarding the standards of care for treating Gender Dysphoria involving any individual listed in response to Interrogatory no. 2.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5**: [sent Dec. 29, 2016]

*See* Defendant Dieguez's response to Request for Production No. 6.

[Request for Production No. 6 to Defendant Dieguez and her response:] [response received Jan. 5, 2017]

6) All documents reflecting or concerning communications regarding the standards of care for treating Gender Dysphoria involving any individual listed in response to Interrogatory no. 2.

RESPONSE: There are no individuals named in this Defendant's Answer to Plaintiff's Interrogatory Number 2, therefore none.

This response is improper for the same reason as the response to Request for Production No. 4. No information was provided.

**REQUEST FOR PRODUCTION NO. 6**: [sent Nov. 17, 2016]

All documents reflecting or concerning any communications between Dr. Marlene Hernandez or Dr. Jose Santeiro or any other prison medical or mental-health provider involved in evaluating or treating Plaintiff's Gender Dysphoria and outside medical or mental-health experts or out-of-state prison medical or mental-health personnel regarding Plaintiff and/or the treatment of Gender Dysphoria.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6**: [sent Dec. 29, 2016]

*See* Defendant Dieguez's response to Request for Production No. 7.

[Request for Production No. 7 to Defendant Dieguez and her response:] [response received Jan. 5, 2017]

7) All documents reflecting or concerning any communications between Dr. Marlene Hernandez or Dr. Jose Santeiro or any other prison medical or mental-health provider involved in evaluating or treating Plaintiff's Gender Dysphoria and outside medical or mental-health experts or out-of-state prison medical or mental-health personnel regarding Plaintiff and/or the treatment of Gender Dysphoria.

RESPONSE: No such documents in Dr. Dieguez's possession before Plaintiff filed the instant lawsuit.

This response is improper for the same reason as the response to Request for Production No. 4. No information was provided.

**REQUEST FOR PRODUCTION NO. 7**:

All documents—including emails—sent by or to any DOC employee discussing or regarding the first sentence of Procedure Number 602.053, Specific Procedure (2)(a)5. ("Inmates who have undergone treatment for GD will be maintained only at the level of change that existed at the time they were received by the Department.").

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7**:

FDOC objects to Request for Production No. 7 because it seeks information that is not relevant to any party's claim or defense, is unduly burdensome

given the lack of importance of the information sought in resolving the issues in this case and the lack of any temporal limitation in the request, and seeks information protected by the attorney-client and work-product privileges. The "first sentence of Procedure Number 602.053, Specific Procedure (2)(a)5" plays no role in FDOC's current treatment decisions involving Plaintiff, which are the only decisions relevant to Plaintiff's claim for injunctive relief. In any event, the language quoted in the request has been abrogated in the current version of Procedure Number 602.053, Specific Procedure (2)(a)5.

This response is improper because the information sought is relevant both to Plaintiff's nominal-damages claim and injunctive-relief claim. It is relevant to her claim for past nominal damages because it was the policy in place during a portion of Plaintiff's time in DOC custody (i.e., prior to the initiation of litigation). It is relevant to her claim for injunctive relief under the voluntary-cessation doctrine. *See* Pl. Resp. to Jones Mot. to Dismiss (Doc. 25) at 3-7. The information sought is centrally relevant to the Eighth Amendment medical-necessity claims in this case.

**REQUEST FOR PRODUCTION NO. 8**:

All documents—including emails—sent by or to any DOC employee discussing policy or practice regarding the treatment of inmates with Gender Dysphoria.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8**:

FDOC objects to Request for Production No. 8 because it seeks information that is not relevant to any party's claim or defense, is unduly burdensome given the lack of importance of the information sought in resolving the issues in this case and the lack of any temporal limitation in the request, and seeks information protected by the attorney-client and work-product privileges. Beyond security considerations, FDOC's treatment of Plaintiff's Gender Dysphoria is based not on any "policy or practice" but on the specific medical needs of Plaintiff as determined by the medical professionals on whom FDOC relies.

This response is improper because the DOC's policies and practices concerning treatment of Gender Dysphoria are obviously centrally relevant to medical-necessity claims concerning the DOC's treatment of Gender Dysphoria. The

DOC's apparent contention that it does not have a policy or practice concerning treatment of Gender Dysphoria is at stark odds with its earlier reference to, and the existence of, Procedure Number 602.053, Specific Procedure (2)(a)5. In an attempt to narrow this request, Plaintiff indicated to Jones on January 20, 2017, that she would accept a temporal limitation on the request from the time of Plaintiff's initial entry into DOC custody.

**REQUEST FOR PRODUCTION NO. 9**:

All documents concerning requests by other inmates at men's facilities for access to female undergarments and/or grooming standards and the responses to such requests.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9**:

FDOC objects to Request for Production No. 9 because it is overbroad and unduly burdensome given the lack of importance of the information sought in resolving the issues in this case, and seeks information protected by the attorney-client and work-product privileges. Request for Production No. 9 includes no temporal limitation, specifies no search terms, and in any event

calls for documents that cannot be electronically searched to determine responsiveness.

This response is improper because the responses to any inmate requests concerning clothing and grooming standards are highly relevant to Jones's stated security concerns relating to Plaintiff's requests for medical care. Moreover, the inability to search records electronically is not a valid basis to refuse to respond. In an attempt to narrow this request, Plaintiff indicated to Jones on January 20, 2017, that she would accept a temporal limitation extending from January 1, 2012, to the present.

**REQUEST FOR PRODUCTION NO. 10**:

All incident reports concerning hair length from January 1, 2012, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10**:

FDOC objects to Request for Production No. 10 because it is overbroad and unduly burdensome, in that it specifies no search terms and in any event calls for documents that cannot be electronically searched to determine responsiveness. To the extent many "incident reports concerning hair

length" relate to claims by inmates that they were entitled to exceptions from FDOC's generally applicable hair-length rules for religious reasons, FDOC further objects that the documents are irrelevant to the claims and defenses at issue in this case.

Similarly here, this response is improper because any incident reports related to hair length are relevant to Jones's stated security concerns relating to Plaintiff's requests for medical care. Moreover, the inability to search records electronically is not a valid basis to refuse to respond. In an attempt to narrow this request, Plaintiff indicated to Jones on January 20, 2017, that she would accept a temporal limitation extending from January 1, 2012, to the present.

**REQUEST FOR PRODUCTION NO. 11**:

All documents discussing or regarding hair length rules at men's facilities, including but not limited to any requests made for exemptions and any exemptions granted.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11**:

FDOC objects to Request for Production No. 11 because it is overbroad and unduly burdensome, in that it specifies no search terms and in any event calls for documents that cannot be electronically searched to determine responsiveness. Subject to and without waiving these objections, FDOC responds that the relevant "hair length rules at men's facilities" are codified at FLA. ADMIN. CODE rr. 33-602.101(4)–(5), which provisions speak for themselves.

Similarly here, this response is improper because any exemptions made to hair-length requirements are highly relevant to Jones's stated security concerns relating to Plaintiff's requests for medical care. Moreover, the inability to search records electronically is not a valid basis to refuse to respond. In an attempt to narrow this request, Plaintiff indicated to Jones on January 20, 2017, that she would accept a temporal limitation extending from January 1, 2012, to the present.

**REQUEST FOR PRODUCTION NO. 13**:

All documents concerning actual or potential conflicts between an inmate's need for medical care and security needs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13**:

FDOC objects to Request for Production No. 13 because it is vague, ambiguous, overly broad and unduly burdensome given the lack of importance of the information sought in resolving the issues in this case. In this case, the medical professionals on whom FDOC relies to direct Plaintiff's treatment have concluded that there is *not* a conflict between Plaintiff's "need for medical care and security needs," so the information sought by Request for Production No. 13 is irrelevant.

The DOC says these documents are not relevant because their medical professionals said there is no conflict between Plaintiff's need for medical care and security needs. But whether Plaintiff has a medical need for access to female grooming standards and undergarments is a highly disputed fact. And Defendants cite security rationales in defense of Plaintiff's claims. Indeed, the DOC has proffered an expert witness on security rationales for refusing Plaintiff's request for female grooming standards and undergarments. It is hard to see the relevance of this expert testimony regarding security if the denial of the requested treatment

was based solely on a medical determination. If the DOC were to withdraw its security-based defense, Plaintiff would withdraw this request for production.

**REQUEST FOR PRODUCTION NO. 14**:

All documents discussing or reflecting exceptions to any DOC policies or practices made in order to meet the medical need of an inmate.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14**:

FDOC objects to Request for Production No. 14 because it is vague, ambiguous, seeks information that is not relevant to any party's claim or defense, is unduly burdensome given the lack of importance of the information sought in resolving the issues in this case, and seeks information protected by the attorney-client and work-product privileges. In this case, the medical professionals on whom FDOC relies to direct Plaintiff's treatment have concluded that Plaintiff does *not* have a "medical need" for the treatment Plaintiff seeks, so the information sought by Request for Production No. 14 is irrelevant.

This response is improper for the same reason as the response to Request for Production No. 13. Moreover, to the extent any documents contain information protected by the attorney-client or work-product privileges, those portions of the documents can be redacted such that the rest of the documents may be provided.

**IV.    Relief Requested**

Plaintiff first requests that the Court order Defendant Jones to fully and completely respond to the above requests and to do so on an expedited basis—not 60 days, as Jones has indicated that she may need to provide some of the material. Plaintiff further requests that the Court order Defendant Jones to award Plaintiff's counsel the fees for time spent in resolving this issue. *See* Initial Scheduling Order (Doc. 59) at 5 ("The Court will ordinarily award counsel fees for time spent in filing (and arguing) a motion to compel if such a motion is necessary to make the recalcitrant party respond, or for time spent in opposing (and arguing) such a motion that is found to be unnecessary or without basis.").

**V.    Conclusion**

For these reasons, Plaintiff requests that the Court order Defendant Jones to respond to the composite discovery requests fully and on an expedited basis and

that Plaintiff be awarded attorneys' fees for the time expended in securing that relief.

<u>Certificate of Conferral</u>: Plaintiff's counsel conferred with Defendant Jones's counsel and was unable to fully resolve the issues addressed in this motion.

Date: February 6, 2017                                Respectfully submitted,

**/s/ Daniel B. Tilley**
**Daniel B. Tilley**
Florida Bar No. 102882
**Nancy G. Abudu**
Florida Bar No. 111881
ACLU Foundation of Florida
4500 Biscayne Blvd., Suite 340
Miami, FL 33137
(786) 363-2714
dtilley@aclufl.org
nabudu@aclufl.org

**Leslie Cooper***
ACLU Foundation
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2627
LCooper@aclu.org
*Admitted to the N.D. Fla.

ATTORNEYS FOR PLAINTIFFS

**Matthew D. Grosack**
Florida Bar No. 073811
DLA Piper LLP (US)
200 S. Biscayne Boulevard, Suite 2500
Miami, Florida 33131
(305) 423-8554
matthew.grosack@dlapiper.com

**Elizabeth C. Akins****
DLA Piper LLP (US)
1201 W. Peachtree Street, NW
Suite 2800
Atlanta, Georgia 30309
(404) 736-7812
liza.akins@dlapiper.com
**Admitted pro hac vice