## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

Reiyn Keohane,

      Plaintiff,

v.                           Case No. 4:16-cv-511-MW-CAS

Mark Inch,
*in his official capacity as*
Secretary of the Florida Department
of Corrections,

      Defendant.

_____

### Plaintiff's Objections to the Bill of Costs

Plaintiff files this objection to Defendant's Bill of Costs, ECF 199. Costs should be denied in their entirety.

### Introduction

Plaintiff Reiyn Keohane brought this case in order to obtain necessary treatment for gender dysphoria from the Florida Department of Corrections. *See, e.g.*, ECF 1 (Complaint); ECF 3-1 (Keohane Decl.) ¶¶ 10-11. When she initially requested hormone therapy, she was told, unequivocally, "you will not be placed on hormonal therapy while incarcerated in the Florida State Dept. of Corrections." ECF 3-1 (Keohane Decl.) ¶ 15. She was also told she could not wear bras or women's

underpants, grow her hair below the ear, or purchase makeup and other canteen items that are available to prisoners at women's facilities. *See, e.g.*, *id.* ¶ 10; ECF 23-2 (Kirkland Decl.) ¶ 4; ECF 37-1 (Kirkland Dep.) at 43:4–7. At the time, the DOC's policy for treating transgender prisoners consisted of a single sentence: "[i]nmates who have undergone treatment for GD will be maintained only at the level of change that existed at the time they were received by the Department." ECF 3-15 at 6.[1] And the DOC was unwilling to provide prisoners with gender dysphoria housed in men's prisons access to female undergarments, grooming standards, or canteen items, regardless of medical need, impeding their ability to socially transition. *See* ECF 37-1 (Kirkland Dep.) at 43:24 – 44:9. Plaintiff spent two years exhausting administrative remedies in her effort to obtain the care she needs, with the DOC denying her repeated requests. But after she filed her lawsuit, things changed. The one-sentence "freeze-frame" hormone policy was quickly deleted and eventually

---

[1] That policy was so obviously inconsistent with constitutional principles that even the Eleventh Circuit—in nominally deciding not to address the issue—could not resist calling out its blatantly unconstitutional nature: "responding to an inmate's acknowledged medical need with what amounts to a shoulder-shrugging refusal even to consider whether a particular course of treatment is appropriate is the very definition of 'deliberate indifference'—anti-medicine, if you will." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266–67 (11th Cir. 2020).

replaced with a seven-page policy specifically dedicated to treatment of "inmates with gender dysphoria," ECF 201-1. The new policy explicitly permits the initiation of hormone therapy in addition to all the forms of social transition requested by Plaintiff in this lawsuit. *See id.* at 5-6. And rather than some medical decisions related to the treatment of gender dysphoria being decided solely by *security* officials,[2] the policy now provides that medical officials are critical members of this process.

Although Plaintiff lost her case on the merits, her lawsuit prompted a titanic policy shift that resulted in her receiving hormone therapy and access to all the forms of social transition she sought in her complaint, and that care is being made available to other transgender inmates across the state. It is in this context of a massive shift in policy prompted by her lawsuit that this Court should consider the doctrine applicable to waiver of costs, to which Plaintiff now turns.

---

[2] *See, e.g.*, ECF 129-3 (Baute Dep.) at 52 ("Q. So if hormones are handled by medical, who would handle request for social transition, if anyone? A. Security.").

Page 3

<u>Argument</u>

Pursuant to this Court's order, Plaintiff will address "(1) Defendant's entitlement to costs, (2) which costs are compensable, and (3) Plaintiff's ability to pay costs." ECF 200 at 1-2.

## I.    The DOC is not entitled to costs.

"Courts have 'great latitude' in determining costs." *Paylan v. Teitelbaum*, No. 1:15-cv-159-MW-GRJ, 2018 WL 5289501, at *1 (N.D. Fla. Aug. 1, 2018) (quoting *Loughan v. Firestone Tire & Rubber Co.*, 749 F.2d 1519, 1526 (11th Cir. 1985)), *report and recommendation adopted*, 2018 WL 5283442 (N.D. Fla. Oct. 24, 2018). Indeed, the text of Rule 54 explicitly permits courts to adjust costs by "court order." *See* Fed. R. Civ. P. 54(d)(1). To "deny full costs under Rule 54(d)," the trial judge need only "state a sound reason for doing so." *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1166 (11th Cir. 2017).

In accordance with this "great latitude," courts across the country have exercised their sound discretion to deny costs in a variety of circumstances, including when the case involves issues of great public importance, it results in benefits to the public, it involves novel or close issues, and it was brought in good faith. *See, e.g.*, *Ass'n of Mexican-Am. Educators v. State of California*, 231 F.3d 572,

593 (9th Cir. 2000); *Popeil Bros. v. Schick Elec., Inc.*, 516 F.2d 772, 775 (7th Cir.

1975); ECF 98 at 2–3, *Attwood v. Clemons*, 1:18-cv-38 (N.D. Fla. July 12, 2021);

*Knox v. City of Fresno*, 208 F. Supp. 3d 1114, 1116 (E.D. Cal. 2016); *Moody Nat.

Bank of Galveston v. GE Life & Annuity Assur. Co.*, 423 F. Supp. 2d 651, 652 (S.D.

Tex. 2003); *Allstate Ins. Co. v. Michigan Carpenters' Council Health & Welfare

Fund*, 760 F. Supp. 665, 670 (W.D. Mich. 1991); *Suffolk Cty. v. Sec'y of Interior*, 76

F.R.D. 469, 473 (E.D.N.Y. 1977).

In this case, there are commanding reasons to deny Defendant's bill of costs

and require it to pay its own costs in defending this lawsuit. As discussed above, but

for Plaintiff bringing this lawsuit, she and other transgender prisoners in the custody

of the DOC would continue to be denied critical treatment for gender dysphoria. Her

lawsuit resulted in a major shift in the policy and approach of the DOC with respect

to the treatment of transgender individuals in DOC custody. Despite the final

decision from the courts rejecting her claims, "important benefits were conferred

upon the public and the prevailing litigant[]" as a result of her case.  *Suffolk Cty.*, 76

F.R.D. at 473.[3]

Plaintiff was forced to bring a lawsuit only because the DOC refused to

provide access to hormone therapy and social transition for two years.  It would be

unjust to force Plaintiff to pay Defendant's costs when those costs were incurred

solely as a result of the DOC's unwillingness to provide access to care that it is now

providing until it was sued.

Other considerations that have led other courts to deny costs also apply here.

The case involved an issue of significant public importance—whether the DOC's

hormone policy and denial of social transition constituted deliberate indifference to

a serious medical need of prisoners with gender dysphoria. The issues presented in

the case were novel in this circuit and beyond.  Indeed, this case had the first trial in

---

[3] Separately, although prisoners are occasionally able to survive summary judgment while *pro se*, it would be extremely rare (if indeed it has ever happened) that a prisoner has the legal acumen and resources to conduct and pay for depositions and expert reports. That a very small number of inmates are able to engage pro bono attorneys to represent them makes that very small number of cases all the more individually important in terms of the conferral of public benefit. That is because— given the structure of our judicial system—there are numerous other lawsuits that need to be brought but unfortunately never will be.

the country concerning access to social transition in prison. And Plaintiff brought the action in good faith, devoting two years to trying to gain access to care through the administrative-remedies process and initiating litigation only when that process failed to provide her the relief she needed.

Given the substantial public benefit provided by Plaintiff's lawsuit and the unfairness of forcing Plaintiff to pay Defendant's costs under the circumstances, there is a "sound reason" to deny costs. *Yellow Pages Photos*, 846 F.3d at 1166.

## II. Even if costs were awarded, not all the costs are compensable.

If the Court declines to deny costs entirely, the Court should reduce any award because three cost items are not properly taxable against Plaintiff. First, the DOC's printing costs of $1,678.63 incurred for its Supreme Court cert-petition response, ECF 199-2 at 2, is not an item of taxable costs authorized by 28 U.S.C. § 1920. *See* Rule 43, *Rules of the United States Supreme Court* ("The Clerk's fees and the cost of printing the joint appendix are the only taxable items in this Court. . . . The expenses of printing briefs, motions, petitions, or jurisdictional statements are not taxable."). Second, the $306.60 for the "Court Reporter for Hearing on 10/19/16," ECF 199-2 at 2, is not taxable because that hearing was the preliminary-injunction argument that had no bearing on the rest of the case and thus was not necessary for

Page 7

any future advocacy by the DOC. *See* 28 U.S.C. § 1920(2) (authorizing award of costs for "[f]ees for printed or electronically recorded transcripts *necessarily obtained for use in the case*") (emphasis added). Finally, the deposition of John Alan McManus ($177.10), ECF 199-2 at 2, never filed on the docket, is not compensable. That deposition was taken solely because in its Answer the DOC contended that after two years of filing and appealing grievances, Plaintiff still had not exhausted administrative remedies. *See* ECF 54 (Answer) ¶¶ 81-84. The deposition was taken on 3/30/17—in other words, deep into discovery and more than seven months after the lawsuit was filed. The DOC did not need a deposition transcript from its own employee to know whether it intended to pursue an affirmative defense of non-exhaustion (which it ultimately did not). Thus, the transcript was not necessary for use in the case, and costs should not be awarded for it. *See Anterio v. City of High Springs, Fla.*, No. 1:17-cv-100-MW/GRJ, 2018 WL 11206471, at *1 (N.D. Fla. May 29, 2018) (defendant denied costs for deposition transcripts "cited in neither party's papers as Defendant has not shown they were necessarily obtained for use in this case").

Although Plaintiff contends costs should not be awarded at all in this matter, if the Court chooses to do so, the Court should not award the full $15,341.66. Instead,

Page 8

the Court should subtract the DOC's cert-petition response ($1,678.63), PI hearing transcript ($306.60), and McManus deposition ($177.10), for a maximum total award of $13,179.33.

### III.    Plaintiff's Ability to Pay

The money Plaintiff has available to her is money she has been saving for her much-needed gender-affirming surgery (should the DOC be willing to arrange for transportation). It would be a cruel irony for the DOC to seek to take Plaintiff's surgery funds to pay its costs in this lawsuit after forcing her to litigate this case to obtain other treatment for gender dysphoria that she needed and that the DOC is now providing. For the reasons stated above, because of the massive policy shift and relief to Plaintiff that was prompted by Plaintiff's lawsuit, the costs should be waived entirely.

Respectfully submitted,

**/s/ Daniel B. Tilley**
**Daniel B. Tilley**
Florida Bar No. 102882
ACLU Foundation of Florida
4343 West Flagler St., Suite 400
Miami, FL 33134
(786) 363-2714
dtilley@aclufl.org

**Ardith Bronson**
DLA Piper LLP (US)
Florida Bar No. 423025
200 South Biscayne Blvd.
Suite 2500
Miami, FL 33131
T. (305) 423-8562
ardith.bronson@dlapiper.com

Page 9

**Leslie Cooper***
ACLU Foundation
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2627
LCooper@aclu.org
*Admitted to the N.D. Fla.

**ATTORNEYS FOR PLAINTIFFS**